**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHELE CARRONE, | : |
| Plaintiff, | : Civil Action No.: 20-5138 (FLW) |
| v. | : |
|  | : **OPINION** |
| UNITEDHEALTH GROUP INC., LEE VALENTA, JASON DREFAHL, ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities), and JOHN DOES 1-5 (fictious names describing presently unidentified individuals), | : |
| Defendants. | : |

**WOLFSON, Chief Judge:**

Michele Carrone ("Plaintiff") has filed a Complaint asserting various state law claims, including claims under the New Jersey Law Against Discrimination ("NJLAD") for hostile work environment, gender discrimination, and retaliation, against Defendants, UnitedHealth Group Inc. ("UHG"), Lee Valenta ("Valenta"), and Jason Drefahl ("Drefahl") (collectively, "Defendants"). The matter was removed to this Court by Defendants, pursuant to 28 U.S.C. § 1441(b), on the basis of diversity jurisdiction. Before the Court is a motion to dismiss the Complaint and to compel Plaintiff to arbitrate her claims in accordance with the UnitedHealth Group Employment Arbitration Policy ("Arbitration Agreement" or "Agreement"). Defendants also seeks attorneys' fees and costs. For reasons set forth below, the motion to compel arbitration is **GRANTED**; the Complaint against Defendants is, therefore, dismissed. However, Defendants' fee request is **DENIED**.

1

I.       **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was employed by UHG from 1981 to January 2020; she held the title of Vice President. (Compl. ¶¶ 15-16.) Plaintiff contends that while employed by UHG she faced discrimination and retaliation, beginning in the summer of 2017, when Valenta, Chief Executive Officer and President of UHG's Optum State Government Solutions division ("OSGS"), became her direct supervisor. (Compl. ¶¶ 8, 30.) Plaintiff alleges that Valenta and Drefahl, Chief Operating Officer of UHG's OSGS division, targeted women; displayed animus and prejudice toward women; engaged in conduct that put women at a severe disadvantage; held stereotypical views about the skills, abilities, and potential of female employees; systematically isolated, shunned, demoted, and harassed female executives; and routinely stripped women of responsibilities and influence. (Compl. ¶ 39.)  She further alleges that after lodging multiple complaints with the Human Capital Department ("HR"), UHG failed to act to curb the discriminatory and retaliatory conduct. (Compl. ¶¶ 135-139.)   On June 10, 2019, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint.  (Compl. ¶ 157.)  Defendants were notified of Plaintiff's complaint in or around July 2019. (Compl. ¶ 157.)  Plaintiff alleges that Drefahl called her, in November 2019, informing Plaintiff that she was being let go "due to financial issues," which Plaintiff claims was a pretext for her wrongful termination.  (Compl. ¶ 179.)

According to Defendants, on November 10, 2015, Plaintiff electronically signed the Arbitration Agreement and agreed to its terms. (Def. Mot. to Dismiss ("Def. Mot."), at 3.)  The Agreement provides that it "creates a contract requiring both parties to resolve most employment-related disputes . . . that are based on a legal claim through final and binding arbitration. Arbitration is the exclusive forum for the resolution of such disputes, and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under the

[Agreement]." (Def. Mot. Ex. A, at 1.)  The Agreement also sets out certain rules and procedures for arbitration. (Def. Mot. Ex. A, at 2-6.)  Generally, the Agreement states that, the rules and procedures are based on the Employment Dispute Resolution Rules of the American Arbitration Association ("AAA"), except for those specifically addressed in the Arbitration Agreement, which are not relevant here. (Def. Mot. Ex. A, at 2.)

In her Complaint, Plaintiff asserts a claim of unlawful retaliatory conduct (Count I) in violation of the NJLAD, N.J.S.A. 10:5-12(d), alleging that she was wrongfully terminated for making complaints about Defendants' discriminatory conduct (Compl. ¶¶ 198-203.)  She asserts a claim of disparate treatment and hostile work environment discrimination due to gender/sex (Count II) in violation of the NJLAD, N.J.S.A. 10:5-12(e), alleging that the individual defendants aided, abetted, incited, compelled and/or coerced, and/or attempted to aid, abet, incite, compel and/or coerce UHG to commit acts and omissions that violated the NJLAD by committing harassing, discriminatory, and retaliatory acts toward Plaintiff; these acts, Plaintiff alleges, also violated the individual defendants' supervisory duty to halt or prevent harassment, retaliation, and discrimination. (Compl. ¶¶ 204-219.)  Plaintiff also asserts that she was wrongfully discharged in violation of public policy (Count III), alleging Defendants had knowledge of Plaintiff's protests and altered her employment status and/or work environment, and/or terminated her as a result thereof. (Compl. ¶¶ 220-222.)  Plaintiff claims that Defendants discriminated against her by paying her less than similarly situated male coworkers for performing the same and/or substantially similar work (Count IV), in violation of the New Jersey Equal Pay Act, N.J.S.A. 10:5-12(t). (Compl. ¶¶ 223-233.)  Lastly, Plaintiff asserts that Defendants took adverse employment actions to retaliate against Plaintiff for complaining about UHG's disparate compensation structure (Count V), in violation of the New Jersey Equal Pay Act, N.J.S.A. 10:5-12 *et seq*. (Compl. ¶¶ 234-243.)

3

In the instant matter, Defendants move to dismiss this action and to compel Plaintiff to arbitrate these claims, pursuant to the Arbitration Agreement. In response, Plaintiff argues that the Agreement is unenforceable due to a provision which allows UHG to unilaterally modify or terminate the Agreement, the Agreement is both procedurally and substantively unconscionable, and enforcement of the Agreement would contravene New Jersey public policy. (Pl. Br. in Opp. to Mot. to Dismiss ("Pl. Br. in Opp."), at 1.)

## II.     STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") "'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate. . . .'" *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). "The FAA's purpose is 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 536-37 (D.N.J. 2013) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). In achieving this end, the FAA provides that contract provisions containing arbitration clauses shall be binding, allows for the stay of federal court proceedings in any matter referable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate. 9 U.S.C. §§ 2-4. Collectively, "those provisions [of the FAA] 'manifest a liberal policy favoring arbitration agreements.'" *Beery*, 953 F. Supp. 2d at 537 (quoting *Gilmer*, 500 U.S. at 24). "Thus, 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* (quoting *Moses H. Mem'l Hosp.*, 460 U.S. at 24-25).

Although federal law presumptively favors the enforcement of arbitration agreements, when a district court is presented with a motion to compel arbitration, it must affirmatively answer the following two questions before compelling arbitration pursuant to § 4 of the FAA: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). To determine whether a valid arbitration agreement exists, federal courts apply applicable state contract law. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288 (3d Cir. 2017). In "[a]pplying the relevant state contract law, a court may also hold that an agreement to arbitrate is 'unenforceable based on a generally applicable contractual defense, such as unconscionability.'" *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003).

### III. ANALYSIS

#### A. Delegation of Gateway Issues to the Arbitrator

Defendants argue that the Agreement contains a provision that delegates the threshold question of arbitrability to the arbitrator. (Def. Mot., at 8.) The specific clause states, "[t]he rules and procedures to be used by the parties are generally based on the Employment Dispute Resolution Rules of the [AAA] . . . The AAA [r]ules shall govern issues not specifically addressed by this [Agreement]." (Def. Mot. Ex. A, at 2.) In turn, the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association state that, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement . . . [and] to determine the existence or validity of a contract of which an arbitration clause forms a part." (Def. Mot., at 9.)

5

In the Third Circuit, "unless a party is specifically challenging the unconscionability of the provision allowing the arbitrator to decide gateway issues of arbitrability, then all gateway issues should be decided by the arbitrator." *Pocalyko v. Baker Tilly Virchow Crouse, LLP*, No. 16-3637, 2016 U.S. Dist. LEXIS 164060, at *11-12 (E.D. Pa. Nov. 29, 2016) ("[D]elegation of authority will be enforced, as long as the validity of the delegation itself is not being challenged."); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("Accordingly, unless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA] and must enforce it under §§ 3 and 4 [of the FAA], leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *S. Jersey Sanitation Co. v. Applied Underwriters Captive Risk Assurance Co.*, 840 F.3d 138, 143 (3d Cir. 2016); *Morgan v. Sanford Brown Institute*, 137 A.3d 1168, 1182 (N.J. 2016) ("The party opposing enforcement of the arbitration must lodge a specific challenge to the delegation clause.  The failure to do so will require that the issue of arbitrability be determined by the arbitrator.").  In other words, "[i]f the plaintiff fails to challenge the delegation provision itself, 'the federal courts must treat the delegation provision' as valid, and 'leav[e] any challenge to the validity of the Agreement as a whole for the arbitrator." *McDonald v. CashCall, Inc.*, No. 16-2781, 2017 WL 1536427, at *4 (D.N.J. Apr. 28, 2017) (quoting *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146–47 (11th Cir. 2015)).  Importantly, "[i]t is presumed that courts must decide questions of arbitrability unless the parties clearly and unmistakably provide otherwise." *Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 335 (3d Cir. 2014); *see also Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 761 (3d 2016).

Here, Plaintiff seeks to invalidate the Arbitration Agreement on the grounds that it is unconscionable and illusory, but does not specifically or explicitly challenge the delegation of authority to the arbitrator. This lack of challenge dooms Plaintiff's attempt to ward off arbitration. Indeed, Defendants have presented clear and unmistakable evidence of an agreement to arbitrate the gateway issues. In that regard, the Agreement expressly incorporates the rules of the AAA, one of which delegates the gateway issue of arbitrability to the arbitrator. In New Jersey, "incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Beacon Sales Acquisition, Inc. v. Bd. Of Trs. of the Teamsters Indus. Empls. Pension Fund.*, 425 F. Supp. 3d 377, 390 (D.N.J. 2019) (quoting *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003)).

In this case, the incorporation-by-reference to the AAA rules is valid, because the Agreement specifically identifies the document it is incorporating: the "Employment Dispute Resolution Rules" set forth in the Agreement are plainly the AAA's Employment Arbitration Rules and Mediation Procedures, as these are the only AAA rules regarding employment arbitration. Numerous courts have found that, by incorporating the AAA rules, which need not be appended to the arbitration agreement, the parties have clearly and unmistakably committed to delegating the question of arbitrability to the arbitrator. *See Richardson v. Coverall N. Am., Inc.*, No. 18-3393, 2020 U.S. App. LEXIS 13568, at *4-5 (3d Cir. April 28, 2020); *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019); *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 553 (5th Cir. 2018); *HealthPlanCRM, LLC v. AvMed, Inc.*, No. 19-157-NR, 2020 U.S. Dist. LEXIS 74187, at *3 (W.D. Pa. April 28, 2020); *Ins. Newsnet.com, Inc. v. Pardine*, No. 11-00286, 2011 U.S. Dist. LEXIS 85825, at *9-10 (M.D. Pa. Aug. 4, 2011); *In re Paragon Offshore PLC*, 588 B.R. 735, 752 (Bankr.

D. Del. 2018). Moreover, the language in the AAA provision granting the arbitrator the power to rule on arbitrability is unambiguous.

Furthermore, Plaintiff is not an unsophisticated party, a potential concern raised by courts when examining the issue of incorporation-by-reference. *See Chong v. 7-Eleven, Inc.*, No. 18-1542, 2019 U.S. Dist. LEXIS 31962, at *27-28 (E.D. Pa. Feb. 28, 2019) While Plaintiff was Defendant's employee, she was also a Vice President at the company, who in her own words was "high performing . . . for more than a decade." (Compl. ¶ 16.) Plaintiff has raised no claim of surprise or hardship at being required to arbitrate the gateway issues. In fact, Plaintiff does not dispute that she assented to the terms of the Agreement when she affixed her electronic signature to the Agreement. Rather, Plaintiff objects to arbitration because she alleges that the Agreement is unenforceable due to a provision which allows UHG to unilaterally modify or terminate the Agreement, the Agreement is both procedurally and substantively unconscionable, and the enforcement of the Agreement would contravene New Jersey public policy. (Pl. Br. in Opp., at 1.) None of these concern the delegation clause or the incorporation of the AAA rules by the Agreement. Therefore, the threshold questions of arbitrability are delegated to the arbitrator and Plaintiff may raise her objections to the Agreement in arbitration.

### B. Attorneys' Fees and Costs

Defendants seek attorneys' fees and costs in connection with this motion. The Court, however, declines to award the requested fees and costs. "Under the American rule, each party normally must bear the burden of its own legal expenses . . . One of the narrow exceptions to this rule is a finding that the losing party litigated in bad faith, vexatiously, or for oppressive reasons." *Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 305 (3d Cir. 1982). "In suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting

party acted without justification or if the party resisting arbitration did not have a reasonable chance to prevail." *Chauffeurs, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3d Cir. 1980) (citations and internal quotation marks omitted). Although Defendants were successful in their motion to compel arbitration, there is no basis to find that Plaintiff acted in bad faith in raising the issue of the validity of the Arbitration Agreement. Therefore, Defendants' request for attorneys' fees and costs is denied.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is **GRANTED;** however, their fee request is **DENIED**. Plaintiff must submit her discrimination-related claims to arbitration and raise any validity issues in the arbitral forum. Accordingly, the Complaint against Defendants is dismissed in favor of arbitration.

DATED:  August 6, 2020                                       /s/ Freda L. Wolfson
                                                                                  Hon. Freda L. Wolfson
                                                                                  U.S. Chief District Judge